UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA RODRIGUEZ-ALVAREZ (A# 215-708-340),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br>Respondent. | No. 1:26-cv-03224 DJC SCR<br><br>ORDER AND<br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through appointed counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## FACTUAL AND PROCEDURAL HISTORY

### I. Factual Background

Petitioner is a citizen and native of Honduras who entered the United States without inspection on or about May 5, 2018, and was arrested by Customs and Border Protection ("CBP") agents. ECF No. 8-2 at 2 (Notice to Appear ("NTA"), Jun. 8, 2018); id. at 9 (FBI "rap sheet"). On June 8, 2018, the Department of Homeland Security ("DHS") issued Petitioner an NTA administratively charging her as inadmissible under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) (immigrant not in possession valid entry document) and 1182(a)(6)(A)(i) (noncitizen present without admission or parole). Id. The NTA notes that DHS issued it after an asylum officer found that

Petitioner had demonstrated a credible fear of persecution or torture. Id. On December 4, 2018, an immigration judge ("IJ") ordered Petitioner removed in absentia. Id. at 6 (Removal Order).

Only July 26, 2025, Petitioner was arrested for aggravated assault with a deadly weapon in violation of Fla. Stat. § 784.021(1)(A). ECF No. 8-2 at 3 (FBI "rap sheet"). On October 10, 2025, while her criminal charges were pending, an IJ granted Petitioner's unopposed motion to reopen removal proceedings. Id. at 14. On December 4, 2025, Petitioner pled nolo contendere to simple assault under Fla. Stat. § 784.011, a second-degree misdemeanor, and was sentenced to "credit time served county jail." ECF No. 8-6. On December 6, 2025, Immigration and Customs Enforcement ("ICE") took Petitioner into custody. ECF No. 8-2 at 16 (Form I-830E). She remains in ICE custody.

**II. Procedural History**

Peititoner, proceeding pro se, filed a § 2241 petition and a motion for temporary restraining order ("TRO") on April 27, 2026, challenging her ongoing, prolonged detention under the Due Process Clause of the Fifth Amendment. ECF Nos. 1, 2. By way of relief, Petitioner sought immediate release or any further relief the Court deems just and proper. ECF No. 1 at 4. District Judge Calabretta denied the TRO on grounds that Petitioner—whose detention had reached roughly five months at that point—"has not presently established a likelihood of success on the merits," and referred the matter to the undersigned for further briefing. ECF No. 6.

Respondent filed an opposition to the petition arguing that Petitioner was an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1). ECF No. 8. Due to the complexity of the legal issues involved, the undersigned appointed counsel to Petitioner and granted leave to file a reply brief. ECF No. 9. In the counseled reply, Petitioner argues that her now eleven-months of detention (when including her period of pretrial criminal detention on an ICE detainer) and separation from her minor child has become punitive.[1] ECF No. 14. She further explains that she is the victim of domestic abuse and fled Honduras to escape her abuser.

---

[1] Petitioner also alerted the Court to Rodriguez v. Ortega, 180 F.4th 702 (5th Cir. 2026), a non-binding authority holding that noncitizens subject to mandatory detention may not be held for more than 90 days without a bond hearing. ECF No. 16. The Fifth Circuit later vacated the ruling pending en banc review. See Rodriguez v. Ortega, 181 F.4th 608 (5th Cir. 2026).

Id. at 5; see also ECF No. 15 (supplemental evidence of past abuse). Finally, Petitioner maintains that the applicable detention statute is 8 U.S.C. § 1226(a). ECF No. 14 at 11-12. By way of relief, Petitioner reiterates asks that the Court grant her immediate release. Id. at 14.

After the matter was submitted, the Parties submitted supplemental filings regarding changed circumstances in Petitioner's removal proceedings. On May 26, 2026, an IJ ordered Petitioner removed to Honduras. ECF No. 18-1. Petitioner claimed in her reply that she timely appealed to the BIA, thus preventing her detention from shifting to 8 U.S.C. § 1231(a). ECF No. 14 at 11. But on July 19, 2026, Respondent filed a motion to dismiss the petition and lift the Court's "no-transfer" order so Petitioner can be removed to Honduras. ECF No. 17. Respondent claims EOIR has no record of an appeal and that Petitioner's detention shifted to 8 U.S.C. § 1231(a) after the expiration of the appeal deadline, on or around June 26, 2026. Id.

Petitioner, again through counsel, opposed the motion to dismiss and explains that the business that Petitioner's family hired to process and mail her BIA appeal, AE Services Group, mailed it to the wrong address—5201 Leesburg Pike #2000, instead of the correct address, 5107 Leesburg Pike #2000. ECF No. 19 at 2-3; see also id. at 9 (payments to AE Services Group); ECF No. 14-1 (USPS tracking slip, Jun. 18, 2026). Petitioner claims that under Ninth Circuit precedent, she has 90 days to file a motion to reopen with the BIA to reopen her appeal. Id. at 3 (citing Corrales v. Blanche, 179 F.4th 739 (9th Cir. 2026)). On August 14 2026, Petitioner filed a supplement to her opposition to Respondents' motion to dismiss notifying the Court that the BIA received her appeal on July 31, 2026. ECF No. 20-1 at 2.

## LEGAL STANDARDS

### I. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S.

537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## II. Statutory Immigration Framework

### A. 8 U.S.C. § 1225(b)(1)

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

### B. 8 U.S.C. § 1231(a)

Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)). An order of removal becomes administratively final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order." Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)).

////

////

## DISCUSSION

### I. Applicable Detention Statute

"Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). It appears from the record that immigration officials initially processed Petitioner pursuant to 8 U.S.C. § 1225(b)(1). Her arrest by CBP agents shortly after entering without inspection, the issuance of an NTA pursuant to 8 U.S.C. §§ 1182(a)(6) and (7), and referral for a credible fear interview all track the steps in § 1225(b)(1)(A)(ii). The record is undeveloped in some respects—such as to whether Petitioner was subsequently released on parole prior to the IJ's order of removal in absentia—but on balance supports a finding that Petitioner, at least during removal proceedings, was subject to mandatory detention under § 1225(b)(1).

The question then is whether Petitioner's detention shifted to 8 U.S.C. § 1231(a) when her removal became administratively final, following the expiration of the 30-day deadline to appeal to the BIA on or about June 26, 2026. Petitioner points to Garcia Corrales v. Blanche, 179 F.4th 739 (9th Cir. 2026) for support in her opposition to the motion to dismiss. There, after the BIA dismissed an appeal of an IJ's order of removal as untimely, the noncitizen moved to reopen "premised on evidence that his notice of appeal was grossly delayed in the mail[.]" Garcia Corrales, 179 F.4th at 742. The BIA misconstrued it as a motion to reconsider and denied it as untimely because it was filed more than 30 days after the order of dismissal. Id. at 741. The Ninth Circuit held that the motion to reopen was timely because it was filed within 90 days of the BIA's dismissal order and remanded to the BIA for consideration. Id. at 743 (citing 8 C.F.R. § 1003.2(c)(2)).

Garcia Corrales reaffirms that Petitioner has 90 days to move to reopen the BIA's dismissal of an appeal. But here, while Petitioner offers evidence that the BIA received her untimely appeal on July 31, 2026, there is no evidence that the BIA has *dismissed* it. See ECF No. 20-1 at 2 (EOIR Case Information Page). Even if Petitioner had properly filed a motion to reopen, "a pending—and thus undecided—motion to reopen does not vacate a final removal

order; it operates only as [request for] 'collateral review' of that order." Manika Mbala v. Mullin, et al., No. 5:26-CV-02606-SK, 2026 WL 1710370, at *2 (C.D. Cal. June 9, 2026) (citing Diouf v. Napolitano, 634 F.3d 1081, 1086 (9th Cir. 2011), abrogated on other grounds as recognized by Rodriguez Diaz, 53 F.4th 1189); see also Bonilla v. Lynch, 840 F.3d 575, 589 (9th Cir. 2016) (vacatur of otherwise final removal order occurs only "if the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen[.]"). Thus, while Petitioner's detention could hypothetically shift back to § 1225(b)(1) if the BIA grants a motion to reopen, that is not the current posture of this case.

While the undersigned is sympathetic that the mailing error was of no fault to Petitioner, the fact is that her removal order remains administratively final by virtue of the expiration of the 30-day deadline to appeal to the BIA.[2] See Ocampo v. Holder, 629 F.3d at 926. Accordingly, Petitioner is currently subject to mandatory detention during the 90-day removal period that commenced on or around June 26, 2026, and will end on or around September 25, 2026. See 8 U.S.C. § 1231(a)(1)-(2).

**II. Due Process Analysis**

In the motion to dismiss, Respondent contends the 90-day mandatory detention period of 8 U.S.C. § 1231(a) is conclusive in resolving the habeas petition. ECF No. 17. However, Petitioner's overall period of detention—over eight months—has now become prolonged. As in other statutory contexts where a noncitizen is subjected to prolonged, mandatory detention, Petitioner may invoke the protections of due process on an as-applied basis.

ICE re-detained Petitioner on December 6, 2025. ECF No. 1 at 6. Because an IJ reopened her removal proceedings two months earlier, she was apparently subject to mandatory detention under § 1225(b)(1) at the time of her re-detention by ICE. Again, the authority for Petitioner's

[2] The undersigned finds that Petitioner is subject to 8 U.S.C. § § 1231(a)(1)-(2) notwithstanding that the BIA apparently received her Notice to Appeal on July 31, 2026, after the expiration of the 30-day deadline to appeal. See ECF No. 20-2. The BIA could nevertheless allow the appeal to proceed, which would shift Petitioner's detention back to 8 U.S.C. § 1225(b)(1). See Irigoyen-Briones v. Holder, 644 F.3d 943, 949 (9th Cir. 2011) (holding that the 30-day deadline to file a notice of appeal with the BIA was a non-jurisdictional, claim-processing rule). However, as explained in the discussion below regarding Petitioner's due process claim, Petitioner would be entitled to the same due process remedy even if she were detained under § 1225(b)(1).

detention shifted to § 1231(a)(2) on or around June 26, 2026, when her time to appeal the IJ's order of removal expired. ECF No. 18-1 at 6.

Despite the shifting statutory authority, Petitioner is subjected to detention that has become prolonged. The Ninth Circuit has referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Other district courts have found mandatory detentions of similar lengths without a fair detention hearing to violate due process. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore [v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"); Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's seven-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation"). The prolonged nature of Petitioner's detention gives rise to an as-applied constitutional challenge to that detention.

In reaching this conclusion, the undersigned finds persuasive the reasoning in Doe v. Becerra, 697 F.Supp.3d 937 (N.D. Cal. 2023), which also involved a habeas petitioner subject to detention under § 1231(a)(2) after a prolonged period of earlier detention. As the Court in Doe found, "[t]he IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing." 697 F.Supp.3d at 943. In the instant case, the entirety of Petitioner's nearly eight months of detention absent a determination that she is a flight risk or a danger to the community establishes the basis for her as-applied challenge to ongoing detention. "While statutory justification for [Petitioner's] detention has shifted, nothing has changed as a practical matter – h[er] time behind bars continues to increase without any showing by Respondents that h[er] civil detention is necessary to achieve the Government's non-punitive ends." Doe, 697 F.Supp.3d at 943.

Petitioner's case is distinguishable from Khotesouvan v. Morones, 386 F. 3d 1298 (9th

Cir. 2004), because Petitioner had already been detained for over 6 months at the time his detention shifted to § 1231(a). The petitioners in Khotesouvan filed their petitions during the 90-day removal period and had only been detained by immigration officials for around two months. In that circumstance, the Ninth Circuit held that their detention could not be challenged until at least the 90-day removal period had passed. Id. While Khotesouvan may preclude habeas petitioners from seeking immediate release under Zadvydas during the 90-day removal period, based on the total length of Petitioner's detention, Khotesouvan does not preclude other relief.

In sum, given the length of Petitioner's detention without a bond hearing and the ongoing mandatory nature of his detention under § 1231(a)(2), the undersigned concludes that she has a protected liberty interest. Respondent's counterargument that Petitioner lacks a liberty interest as an "applicant for admission" is unconvincing. Respondent relies on Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), where the Supreme Court's "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." Padilla, 704 F. Supp. 3d at 1171-72; see also Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving [noncitizen's] due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original). Thuraissigiam "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." Padilla, 704 F. Supp. 3d at 1172. The Court therefore proceeds to apply the due process framework in Mathews v. Eldridge.

**A. Private Interest**

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding prolonged detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). At this point in the proceedings, Petitioner has been detained for over eight months. The Ninth Circuit has previously referred to detentions of longer than six months as prolonged "in

the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Petitioner's private interest is further strengthened by her close relationship with her twelve-year-old daughter, who submitted a letter of support. ECF No. 19 at 9. This factor tilts strongly in Petitioner's favor.

Respondent filed an answer on May 13, 2026, when Petitioner's detention was at roughly six months, and argued that she extended her own detention by seeking continuances of her removal proceedings. ECF No. 8 at 4. The record shows that she did receive two continuances that delayed her hearing from March 25, 2026, to May 12, 2026 (and presumably again to May 26, 2026, the date of her removal order). Declaration of Deportation Officer J. Mangona, ¶¶ 14-15, ECF No. 8-1 at 3. She requested the first continuance to confer with her new attorney, and the second to look for a new attorney after that attorney withdrew. ECF No. 8 at 2. At this point in time, Petitioner's detention would be still be prolonged if the Court discounted that roughly two-month period. Thus, this is not a case of a Petitioner delaying herself into bond eligibility. Moreover, the undersigned will not infer bad faith simply because Petitioner—an individual proceeding in forma pauperis and who entered immigration detention immediately from a lengthy period of criminal pretrial detention—sought to leave to seek counsel. "The duration and frequency of [continuances] do not diminish his significant liberty interest in . . . his irreparable injury of continued detention without a bond hearing." Hernandez Gomez v. Becerra, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023); see also Lopez v. Garland, 631 F. Supp. 3d 870, 881–82 (E.D. Cal. 2022) (finding four-month delay in proceedings to adjudicate petitioner's Form I-130 a "neutral" factor in due process analysis). Accordingly, the first Mathews factor favors Petitioner.

**B. Risk of Erroneous Deprivation**

Having determined that Petitioner has a protected liberty interest, the Court turns to the second Mathews factor, which addresses whether there is a risk of an erroneous deprivation to that liberty interest. In this case, it is undisputed that Petitioner has not received a bonding hearing at any point during the nearly eight months of her detention to date. "In the absence of

any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value." Black v. Decker, 103 F.4th 133, 153 (2d Cir. 2024) (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year of mandatory, pre-removal detention). Accordingly, the undersigned finds that the second Mathews factor also favors Petitioner.

**C. Government's Interest**

Under the final Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. The government has a strong interest in seeking to remove noncitizens during the 90-day removal period. "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain h[er] without a bond hearing." Maksim v. Annex, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (internal quotation and citation omitted). Should Respondent have concerns that Petitioner's release may impede her removal, the IJ is best suited to address them. "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community." Jimenez, 2020 WL 510347, at *3 (citing In re Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006)). Further, any fiscal or administrative burden that would result from providing Petitioner with a bond hearing before an IJ is "minimal." See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). In sum, this factor favors Petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted on its sole due process challenge to Petitioner's prolonged detention. Because petitioner is within § 1231(a)'s 90-day removal period, the appropriate remedy is not immediate release, but an individualized bond hearing before a neutral decision-maker at which the government bears the burden of justifying continued detention. See Doe, 697 F. Supp. 3d at 945-48 (holding due process required a bond hearing before an IJ in which government bears the

burden where petitioner was within the 90-day removal period but had already been detained for a prolonged period of time). At the bond hearing, "the government must prove by clear and convincing evidence that" Petitioner "is a flight risk or a danger to the community to justify denial of bond," because "civil commitment for any purpose constitutes a significant deprivation of liberty." Singh, 638 F.3d at 1203-04; Doe, 697 F. Supp. 3d at 947-48 (adopting reasoning of Singh in context substantially identical to this case); see also Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases).

Finally, because Petitioner is within the 90-day removal period, the undersigned will grant Respondent's request to lift the "no-transfer" order at ECF No. 7. Respondent has not provided the Court with any specific information regarding the feasibility or immediacy of Petitioner's removal. If Petitioner's pending removal impedes Respondent's ability to comply with any order adopting these findings and recommendations, Respondent may address that fact in a status report or an appropriate motion.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that the order prohibiting Petitioner's transfer from this judicial district (ECF No. 7) is LIFTED.

In addition, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of any final order in this case.

3. Respondent[s] be further required to notify Petitioner as well as any immigration counsel of record of the date of the required bond hearing at least seven (7) days in advance of the hearing.

4. Respondents be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

5. Petitioner's emergency motion for immediate release (ECF No. 14) be DENIED.

6. Respondent's motion to dismiss (ECF No. 17) be DENIED.

7. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE